J-S52017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KYLE MARCEL PAGE | : | |
| | : | |
| Appellant | : | No. 2942 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 2, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002704-2017

BEFORE: PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    Filed: November 4, 2021

Appellant, Kyle Marcel Page, appeals from the judgment of sentence entered in the Court of Common Pleas of Bucks County following his conviction by a jury on the charges of robbery, retail theft, and related offenses.[1] After a careful review, we affirm.

The relevant facts and procedural history are as follows: At docket number 2704-2017, the Commonwealth charged Appellant with robbery and related offenses in connection with an armed robbery, which occurred at a Metro PCS store in Tullytown Borough at 10:57 a.m. on February 20, 2017,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii) and 3929(a)(1).

as well as with retail theft in connection with the theft of cell phones from the same Metro PCS store in Tullytown Borough on January 27, 2017.[2]

On September 13, 2017, the Commonwealth filed a motion seeking to consolidate docket number 2704-2017 with docket numbers 2795-2017 and 2524-2017. Before the trial court ruled on the motion, on September 13, 2017, Appellant, who was represented by the Public Defender's Office, entered a *nolo contendre* plea to the charges at lower court docket number 2704-2017.[3]

On October 4, 2017, the Public Defender's Office sought to withdraw its representation, as well as filed motions seeking to withdraw Appellant's *nolo contendre* plea. The trial court permitted the Public Defender's Office to withdraw, appointed new counsel, and granted Appellant permission to withdraw his plea.[4]

---

[2] Moreover, at lower court docket number 2795-2017, the Commonwealth charged Appellant with retail theft in connection with the theft of two cell phones at a Metro PCS store in Falls Township at 4:25 p.m. on February 11, 2017. At lower court docket number 2524-2017, the Commonwealth charged Appellant with making false reports at 4:58 p.m. on February 11, 2017, when he identified himself as "Will Bryant" to a police officer and reported that his white Ford Fusion had been stolen.

[3] Appellant entered guilty pleas to the charges at lower court docket numbers 2795-2017 and 2524-2017.

[4] Appellant sought to withdraw his guilty pleas in docket numbers 2795-2017 and 2524-2017, and the trial court granted the motion.

On September 25, 2018, Appellant filed a counseled pre-trial motion at docket number 2704-2017 seeking to sever the charges stemming from the January 27, 2017, incident involving the Metro PCS store in Tullytown Borough from the charges stemming from the February 20, 2017, incident involving the same store. Moreover, on October 1, 2018, Appellant filed a counseled pre-trial motion seeking to suppress evidence seized from the trunk of his vehicle on February 20, 2017.[5] Specifically, Appellant averred the following regarding the search of his vehicle:

1. [Appellant] is the defendant in criminal information [2704-2017] wherein he is charged with Robbery, Theft, Receiving Stolen Property and related crimes arising from an incident that occurred on 2/20/17 and Retail Theft arising from an incident that occurred on 1/27/17.

2. On or about February 20, 2017, Detective Timothy Carroll searched the trunk of [Appellant's] vehicle without consent, authorization, exigent circumstances, probable cause, or a valid warrant.

_____

[5] Appellant also sought to suppress evidence, which police seized from his home pursuant to a search warrant. Appellant contended "[o]n February 21, 2017, members of law enforcement entered [Appellant's] home without consent, authorization, exigent circumstances, probable cause or a valid warrant." Appellant's Suppression Motion, filed 10/1/18. He averred the "entry into his home and subsequent search and seizure was conducted in violation of his rights as secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by Article I, Sections 8 and 9 of the Pennsylvania Constitutions." *Id.* In this vein, he argued the "search warrants were unreasonable and invalid as the affidavits in support of the search warrants were insufficient to establish probable cause." *Id.* Thus, he contended "any documents or other items seized pursuant to service of these warrants was done in violation of his rights as secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by Article I, Sections 8 and 9 of the Pennsylvania Constitutions." *Id.*

3. As a result of the aforesaid illegal search, [D]etective Carroll seized various items alleged to have been owned or possessed by [Appellant], including six (6) cell phones.

*** 

WHEREFORE, after a hearing on the instant petition, [Appellant] respectfully requests [the trial] court grant the instant MOTION TO SUPPRESS[.]

Appellant's Suppression Motion, filed 10/1/18.

On December 4, 2018, Appellant proceeded to a suppression hearing, at the commencement of which the trial court sought to determine the precise issues before the court. The relevant exchange occurred:

THE COURT: And then there's a search of the car. I assume that's—I don't know what the Commonwealth's theory is. Consensual?

[DISTRICT ATTORNEY]: No. Probable cause.

THE COURT: Okay. Without a warrant due to exigent circumstances?

[DISTRICT ATTORNEY]: It's an automobile exception.

THE COURT: Okay.

N.T., 12/4/18, at 8-9.

The trial court then took testimony related to Appellant's motion to suppress the evidence seized from his vehicle. Specifically, the Commonwealth presented Detective Timothy Carroll as a witness while Appellant presented Police Chief Daniel Doyle as a witness.

Detective Carroll testified he has been a police officer since April of 1977, and in 1998, he became a county detective with the Bucks County District Attorney's Office. *Id.* at 18. Detective Carroll indicated he first became

acquainted with Appellant five or six years prior to the instant matter when Appellant, who was a witness in an unrelated murder case, was placed in the witness protection program, which was sponsored by the Pennsylvania Office of Attorney General. *Id.* Detective Carroll was Appellant's point of contact while Appellant was in the witness protection program. *Id.*

Detective Carroll testified that, at 2:25 p.m. on February 20, 2017, approximately three and one-half hours after an armed robbery had occurred at the Tullytown Borough Metro PCS store, he received a telephone call from Chief Doyle asking him to respond to St. Mary's Hospital's parking lot. *Id.* at 19-20. Chief Doyle told the detective that "a person had contacted the chief and wanted to provide information." *Id.* at 20.

Upon arriving at the hospital parking lot, Detective Carroll observed and recognized Appellant, as well as Chief Doyle. *Id.* Chief Doyle approached Detective Carroll and provided him with details of the Tullytown Borough Metro PCS robbery. *Id.* at 21. Specifically, the police chief told the detective:

> [T]here had been a robbery in Tullytown Borough, that it was a gunpoint robbery, cell phones had been taken, that a male had ran from the scene of the robbery, and [the male had] ran to [Appellant's] car, and somehow [Appellant] either left with the male, had contact with the male.
>
> And then since the robbery, in the hours after the robbery and before [the] meeting there at the hospital, [Appellant] had contacted Tullytown police and wanted to cooperate and provide information.

*Id.* at 23-24.

Detective Carroll testified that, after speaking with Chief Doyle, he believed Appellant "had been somehow involved in this robbery, had been with the actor, had provided transportation to the actor, and that there was some contact between the alleged actor and [Appellant], and [Appellant] wanted to relay that to the police." *Id.* at 21. Accordingly, Detective Carroll approached Appellant to see what information he had regarding the robbery.

Detective Carroll testified Appellant told him that he was not the person who had robbed the store but that "he was merely a provider of transportation to that person." *Id.* at 27. Further, in an effort to convince Detective Carroll of his role, Appellant played a voicemail message, which Appellant alleged was left by the robber. *Id.* at 24. However, upon hearing the voicemail message, Detective Carroll recognized that the voice belonged to Appellant. *Id.* Detective Carroll indicated that, at this point, he was skeptical of Appellant's story, and he told Appellant that he thought the voice was Appellant's voice. *Id.* at 24, 27-28.

Nonetheless, Appellant told the detective and police chief that he was fully prepared to cooperate; however, he needed some time to take care of his girlfriend's children. *Id.* Detective Carroll testified:

> So, we decided, consensus, that we would meet with [Appellant]
> a short time later and give him some time to do what he needed
> to do. He had been there with his Ford Fusion, he had been the
> driver of the Ford Fusion. He indicated that was the car that had
> been at the scene of the robbery or nearby. So, I agreed we would
> meet him shortly thereafter, and then I decided to search the car.

*Id.*

Detective Carroll testified he believed Appellant had a handgun in the Ford Fusion. *Id.* at 25. When he searched the trunk of the Ford Fusion, he found a child's backpack containing "six phones, iPhones,…that appeared to be in new condition…[T]here was also an empty iPhone box, a box where a phone was not contained in the box. It was missing." *Id.* at 26.

On cross-examination, Detective Carroll reiterated that, prior to the search of Appellant's vehicle in the hospital parking lot, Appellant admitted he had contact with the alleged armed robbery suspect on the day of the robbery. *Id.* at 34. The detective explained that Appellant told him the voicemail message was allegedly from the robber, who wanted to apologize to Appellant for getting him involved in the robbery. *Id.* at 36. Further, the detective indicated that, prior to the search of the vehicle, Appellant made an admission to Chief Doyle that the Ford Fusion, which he had driven to the hospital parking lot, had "somehow been involved in the robbery[.]" *Id.* at 45.

Detective Carroll clarified:

> [This admission by Appellant] was the whole reason we were meeting with [Appellant], that he said that he had given a ride, and he had left the scene [of the armed robbery] in that car. [Appellant] had given a ride to another alleged actor and that [Appellant] had left the scene. I believe the chief also told me that there was a witness that described the car. I don't know if it had been identified by that time, but it fit the description of the vehicle used.
>
> In my mind, there was no question that [this] was the car involved. [The question] was how was it involved and what and so forth.

*Id.* at 46.

Detective Carroll testified he did not ask Appellant for consent to search the vehicle. *Id.* He noted that a photo from the scene reveals that, prior to the police searching the vehicle, "the glove compartment [was] open and some cash [was] visible." *Id.* at 38-39. He clarified that when he saw the backpack in the trunk, he was not able to view its contents until he "manipulated" the bag. *Id.* at 42.

On redirect examination, Detective Carroll noted he searched Appellant's Ford Fusion for places where handguns are commonly hidden, including the trunk. *Id.* at 47.

Police Chief Daniel Doyle testified he was one of the lead officers investigating the armed robbery, which occurred on February 20, 2017, at the Metro PCS store in Tullytown Borough. N.T., 12/5/18, at 30. He arrived at the store within minutes after the robbery, and a witness, Chris Smolski, reported he saw the perpetrator flee the store. *Id.* at 32. Mr. Smolski further reported he had chased the fleeing perpetrator, and he saw a white sedan back-up, strike a parked car, and drive past him. *Id.* at 33. The witness saw only one person in the white sedan. *Id.*

Chief Doyle confirmed that, shortly thereafter, Appellant contacted the police to provide information as to the person who was allegedly responsible for the armed robbery. *Id.* at 34. Chief Doyle indicated he spoke to Appellant on the telephone, Appellant sounded "a little nervous[,]" and Appellant told

the police chief he was recording the telephone call. *Id.* Appellant agreed to meet with the police chief at the parking lot at St. Mary's Hospital. *Id.* at 35.

Chief Doyle testified that, upon arriving at the hospital parking lot, he noticed that the white sedan described by Mr. Smolski matched the description of the vehicle, which Appellant drove to the hospital parking lot to meet the police. *Id.*

On cross-examination, Chief Doyle confirmed Mr. Smolski told him that the robbery suspect drove away in a white Ford Fusion. *Id.* at 38. The following relevant exchange then occurred between Chief Doyle and the district attorney on cross-examination:

**Q.** Sir, I just want to take you chronologically through the 20th. The call that Tullytown gets is approximately 10:57 on the 20th; is that correct?

**A.** Correct.

**Q.** And then you and other Tullytown police officers respond to the Metro PCS, I guess, within minutes of that, correct?

**A.** Correct.

**Q.** All right. And during that time that you are at the Metro PCS store, you interview Chris Smolski, correct?

**A.** Yes.

**Q.** And that's when Mr. Smolski tells you he observed the individual fleeing the Mr. [*sic*] Metro PCS, correct?

**A.** Yes.

**Q.** And that [*sic*] Mr. Smolski tells you he followed the individual into the Kenwood section?

**A.** Yes.

**Q.** And then he observed that individual drive off in a white sedan?

**A.** He said he observed the individual in the white sedan back up into a car and then pull away.

**Q.** And this was all told to you prior to you contacting Bucks County detectives or meeting [Appellant] at St. Mary's Hospital, correct?

**A.** Correct.

**Q.** All right. And then at some point later that afternoon, Tullytown gets a call from [Appellant]; is that correct?

**A.** Yes.

\*\*\*

**Q.** And then you get on the phone and you talk to him, right?

**A.** Yes.

**Q.** Now, I think you said you don't remember what the, I guess, details of that, but just the general gist of what that conversation was?

**A.** Yes.

**Q.** Is that right?

**A.** Yes.

**Q.** All right. And in your report you indicate, during the conversation I asked [Appellant] to come down to speak with me at the police station and he seemed hesitant to do that. [Appellant] was concerned about getting in trouble, and he that [*sic*] didn't know his friend was going to do a robbery; is that correct?

**A.** Correct.

\*\*\*

**Q.** Okay. And then after the conversation with [Appellant] over the phone you then speak to Detective Carroll [and his partner] correct?

**A.** Correct.

**Q.** And then you provided them the information that you had received up until that point, correct?

**A.** Correct.

*Id.* at 40-42.

- 10 -

At the conclusion of the hearing, defense counsel made the following argument in support of Appellant's motion to suppress the evidence seized from Appellant's vehicle:

[DEFENSE COUNSEL]: I would like to make argument specifically regarding the seizure of the phones from the trunk.

THE COURT: Sure.

[DEFENSE COUNSEL]: Your Honor, it's my position that the seized items should be suppressed, and the Commonwealth should be precluded from entering any evidence of finding these cell phones in the trunk and entering any evidence of that into the trial, because I don't believe—or I submit that Detective Carroll did not have probable cause to search the trunk at the time he searched it.

\*\*\*

Detective Carroll would have to have reason to believe that either, obviously, the crime is still not occurring, but let's say proceeds from the crime or an instrumentality used during the crime was in that vehicle, because he didn't ask for consent [and] he didn't see anything in plain view. The only thing he could say is, jeez, would there still be stuff from this robbery in this car.

\*\*\*

Detective Carroll, obviously, had a correct hunch or instinct that there might be something in that car, and so he acted on that instinct. No problem there. He recovered some items, and gets them off the street. But legally we need something more than a hunch or instinct or some gut feeling. You need a reasonable belief.

\*\*\*

Detective Carroll did what he did, and God bless him, but I don't think it meets the constitutional standards of probable cause to search, even under the most recent cases. You know, the Superior Court has held that certain information provided to law enforcement can be stale and no longer valid for inclusion or reliance for a search warrant. I would say this is similar in a way and analogous to those types of situations.

The case that removed exigent circumstances from Pennsylvania State Law, Commonwealth versus Gary, that's an

instance where a car is stopped for tinted windows. Police from Philadelphia come up on an unknown driver, a stopped car with tinted windows. When they approach the vehicle, they smell marijuana. They ask the occupants if there's anything in the car, and they admit to there being drugs in the car. That's probable cause.

Listen, if you're telling me there's drugs in the car, I'm going to search the car now, and I have every right to do so. [Appellant] never tells him or tells anyone that there's anything in the car that would be subject to a seizure.

I guess the bottom line is, Judge, because of the time that's passed by and the break and attenuation between the criminal event and this meeting, a meeting that [Appellant] asked for voluntarily, doesn't add up to probable cause to a reasonable belief that there still would be something or that there ever was or still would be something from that robbery in the car. And that's not vitiated by the fact that there actually might have been, that Detective Carroll found items that he seized.

Therefore, I would strenuously argue that the cell phones that were found, and again, the U.S. currency—I know that's not part of the case—but under the Commonwealth's theory, the cell phones should be precluded. They should not be admitted into evidence.

*Id.* at 15-22.[6]

The trial court denied Appellant's motion to suppress. Further, with regard to lower court docket number 2704-2017, which included both the January 27, 2017, retail theft and the February 20, 2017, armed robbery of the same Tullytown Borough Metro PCS store, the trial court denied Appellant's request to sever these charges from each other. Also, the trial

---

[6] In addition to the aforementioned, throughout his argument, defense counsel discussed certain facts and requested the trial court make certain inferences from these facts in determining whether the police had probable cause to search Appellant's vehicle.

- 12 -

court denied the Commonwealth's request to consolidate docket number 2704-2017 with either docket number 2524-2017 or 2795-2017.[7]

On January 29, 2019, Appellant, represented by counsel, proceeded to a jury trial with regard to the instant case: lower court docket number 2704-2017. At the conclusion of the trial, the jury convicted Appellant of the offenses indicated *supra*.

On July 2, 2019, the trial court sentenced Appellant to an aggregate of nine years to twenty years in prison, and Appellant filed a timely, counseled post-sentence motion, which the trial court denied on September 9, 2019. This timely, counseled appeal followed on October 9, 2019. On October 10, 2019, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant timely complied on October 30, 2019.[8] The trial court filed a responsive Rule 1925(a) opinion on August 6, 2020.

_____

[7] Further, the trial court consolidated the charge at lower court docket number 2524-2017 with the charge at 2795-2017. These docket numbers relate to the retail theft at the Falls Township store, as well as Appellant's report of a stolen car, both of which occurred on February 11, 2017.

[8] In his Pa.R.A.P. 1925(b) statement, Appellant presented the following two issues (verbatim):

1. The Trial Court erred in denying defendant's motion to suppress evidence seized by Detective Timothy Carroll, including cell phones and a cell phone box, after Detective Carroll conducted a search of the trunk of the vehicle which defendant had driven to a meeting with police approximately two hours after a reported robbery where that search was done without consent, authorization, exigent circumstances, probable cause or a valid warrant.

*(Footnote Continued Next Page)*

On June 2, 2021, this Court filed an unpublished memorandum vacating Appellant's judgment of sentence and remanding for further proceedings. *See **Commonwealth v. Page***, No. 2942 EDA 2019 (Pa.Super. 6/2/21) (unpublished memorandum). However, on June 11, 2021, the Commonwealth filed a timely application for reconsideration, which this Court granted on July 29, 2021. This Court directed the parties to file new briefs.

In his "Statement of the Questions Involved," Appellant presents the following issues (verbatim):

1. Did the Trial Court err in denying Appellant's Motion to Suppress Physical Evidence?

2. Did the Trial Court abuse its discretion in consolidating the charges of a Retail Theft that occurred on 1/27/17 and a Robbery that occurred on 2/20/17?

Appellant's Brief at 4 (suggested answers omitted).

In his first issue, Appellant contends the warrantless search of his vehicle was illegal. Specifically, Appellant contends Detective Timothy Carroll did not have probable cause to search his white Ford Fusion during the meeting in the hospital parking lot. Additionally, citing to ***Commonwealth v. Alexander***, ___ Pa. ___, 243 A.3d 177 (2020), he contends "the

---

2. The Trial Court erred in granting the Commonwealth's motion to consolidate and denying defendant's motion to sever a Retail Theft charge arising from an incident that occurred on January 27, 2017, at the Tullytown Metro PCS store and the Robbery charge that occurred on February 20, 2017, at the same Tullytown Metro PCS store.

Appellant's Pa.R.A.P. 1925(b) statement, filed 10/30/19.

suppression hearing did not establish exigent circumstances permitting a warrantless search of the vehicle." Appellant's Brief at 14, 18. Appellant recognizes that our Supreme Court filed its Opinion in **Alexander** after Appellant filed the instant notice of appeal; however, he contends that "he is entitled to the benefit of [the] decision." Appellant's Brief at 19.

Our standard of review is well settled:

When reviewing a challenge to the denial of a suppression motion, our standard of review is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

**Commonwealth v. Smith**, 164 A.3d 1255, 1257 (Pa.Super. 2017) (formatting altered). Further, our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial. **In the Interest of L.J.**, 622 Pa. 126, 79 A.3d 1073, 1085 (2013).

In the case *sub judice*, the trial court held that the warrantless search of Appellant's car was permissible under the automobile exception adopted by our Supreme Court in **Commonwealth v. Gary**, 625 Pa. 183, 91 A.3d 102

(2014) (plurality), wherein the Court held that, in accordance with federal law, the police may conduct a warrantless search of a stopped vehicle if they have probable cause to do so, regardless of any exigency beyond the vehicle's inherent mobility.

However, while the case *sub judice* was pending on appeal, our Supreme Court, in **Alexander**, **supra**, overruled **Gary**, **supra**, and held that warrantless vehicle searches require both probable cause and exigent circumstances under Article I, Section 8 of the Pennsylvania Constitution. Thus, in addressing Appellant's suppression claim, we initially determine whether **Alexander** applies to the instant case since the trial court held the warrantless search was allowed under the automobile exception and did not consider the dictates of **Alexander**.

The Commonwealth specifically asserts that Appellant cannot avail himself of **Alexander** because he has waived any state constitutional claim, challenge to the automobile exception, or constitutionality of **Gary**, **supra** as applied to the warrantless search of his vehicle. In support of its assertion, the Commonwealth relies on this Court's recent decision in **Commonwealth v. Grooms**, 247 A.3d 31 (Pa.Super. 2021). There, we were faced with a similar scenario where the trial court denied a suppression motion by finding that the police had probable cause to search a car without a warrant. **Id.** at 35. During the appeal, however, the Supreme Court decided **Alexander**.

In a footnote, this Court explained the law on the retroactive application of a new criminal rule:

> The decision in **Alexander**, **supra**, overruling **Gary**, announced a new criminal rule. When a United States Supreme Court decision results in a 'new rule,' that rule applies to all criminal cases still pending on direct review. "Case law is clear, however, that in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved at 'all stages of adjudication up to an including the direct appeal.'" **Commonwealth v. Tilley**, 566 Pa. 312, 780 A.2d 649, 652 (2001) (citation omitted); **see also Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa.Super. 2014) (*en banc*) ("To be entitled to retroactive application of a new constitutional rule, a defendant must have raised and preserved the issue in the court below.")[.]

**Grooms**, 247 A.3d at 37 n.8 (quotation marks and quotations omitted).

Accordingly, based on these legal precepts, we examined the appellant's filings in **Grooms** and held "[the] [a]ppellant here did not challenge the **Gary** automobile exception. Thus, to the extent relevant to the disposition of this appeal, and consistent with **Tilley** and **Newman**, [the] [a]ppellant cannot rely on **Alexander** to challenge the warrantless search of his vehicle."[9] **Grooms**, 247 A.3d at 37 n.8.

Subsequently, this Court has examined and applied **Grooms** in numerous cases to determine whether an appellant is entitled to the retroactive application of the new criminal rule announced in **Alexander**. **See Commonwealth v. Evans**, No. 1547 MDA 2020, 2021 WL 4352310, at *2

---

[9] **Grooms** also noted the appellant's passing reference to lack of exigent circumstances did not sufficiently preserve the issue on appeal.

(Pa.Super. filed 9/24/21) (unpublished memorandum) ("[The] [a]ppellant has waived the application of **Alexander** by not challenging the constitutionality of the automobile exception articulated in [**Gary**, **supra**] in his motion to suppress. **See** [**Grooms**, **supra**]."); **Commonwealth v. Lowe**, No. 600 WDA 2020, 2021 WL 3259388, at *4 (Pa.Super. filed 7/30/21) (unpublished memorandum) (holding the appellant preserved application of **Alexander** where he argued in suppression motion that the warrantless vehicle search violated both the U.S. Constitution and Article 1, Section 8 of the Pennsylvania Constitution, as well as argued during suppression hearing there were no exigent circumstances to justify warrantless search); **Commonwealth v. Aursby**, No. 901 EDA 2020, 2021 WL 2826473 (Pa.Super. filed 7/7/21) (unpublished memorandum) (where the appellant limited his suppression issue to a challenge under the Fourth Amendment, and he did not challenge the trial court's application of the **Gary** automobile exception in his Rule 1925(b) statement, the appellant did not preserve application of **Alexander** on appeal); **Commonwealth v. Greene**, No. 545 WDA 2020, 2021 WL 1575456, at *5 (Pa.Super. filed 4/22/21) (unpublished memorandum) (holding application of **Alexander** may be preserved where, although the appellant did not explicitly challenge the **Gary** decision, in his pre-trial motion

"he did allege that the Commonwealth needed to show exigent circumstances existed and its failure to do so violated the Pennsylvania Constitution.").[10]

In the case *sub judice*, Appellant made a passing reference to exigent circumstances in his pre-trial suppression motion and court-ordered Rule 1925(b) statement. However, Appellant did not allege the search of his vehicle violated the Pennsylvania Constitution, and he did not challenge the trial court's application of the **Gary** automobile exception.[11]

Moreover, at the commencement of the suppression hearing, the Commonwealth specifically averred it did not need to prove exigent circumstances to justify the warrantless search of Appellant's vehicle since the **Gary** automobile exception applied, and defense counsel did not object. Further, at the conclusion of the suppression hearing, defense counsel specifically indicated he sought suppression of the evidence seized from Appellant's vehicle based on a lack of probable cause to search, and he recognized the applicable law in **Gary** removed the need for exigent

---

[10] While we are not bound by unpublished memorandums filed by this Court, we find the cited memorandums to be persuasive. **See** Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[11] As indicated *supra*, while Appellant raised state constitutional grounds in his challenge to the issuance of a search warrant and the search of his house, he made no such assertion in his pre-trial motion as it related to the warrantless search of his vehicle.

circumstances from this case. Accordingly, we agree with the Commonwealth that Appellant cannot avail himself of *Alexander*. *See Grooms*, *supra*.

Having found *Alexander* inapplicable, we next determine whether the trial court erred in determining the police had probable cause to conduct a warrantless search of Appellant's vehicle under *Gary*.

> [A] determination of probable cause requires only that the totality of the circumstances demonstrates a fair probability that contraband or evidence of a crime will be found in a particular place….[T]he evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer.

*Commonwealth v. Scott*, 210 A.3d 359, 363 (Pa.Super. 2019) (citations and quotation marks omitted).

"The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require *only a probability*, and not a prima facie showing, of criminal activity." *Commonwealth v. Thompson*, 604 Pa. 198, 985 A.2d 928, 931 (2009) (citations omitted) (italics in original). Thus, "[p]robable cause is a practical, nontechnical conception: it is a fluid concept—turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules." *Commonwealth v. Barr*, 240 A.3d 1263, 1274 (Pa.Super. 2020) (citation omitted). "The level of probable cause necessary for warrantless searches of automobiles is the same as that required to obtain a search warrant." *Scott*, 210 A.3d at 363 (citation omitted).

In the case *sub judice*, the testimony from the suppression hearing reveals that Chief Doyle responded within minutes to an armed robbery, which occurred at approximately 10:57 a.m. on February 20, 2017, at the Metro PCS store in Tullytown Borough. A witness, Mr. Smolski, provided a statement to the police chief at the scene. Specifically, Mr. Smolski informed the police chief that he saw the robbery suspect flee the store, and he followed the suspect to a white Ford Fusion. Mr. Smolski reported he saw the white Ford Fusion strike a car and leave the scene.

Later that afternoon, Appellant contacted the police chief to report that he had information about the robbery. Chief Doyle asked Appellant to travel to the police station; however, Appellant was hesitant to do so. Therefore, the police chief agreed to meet Appellant in the parking lot of St. Mary's Hospital. Shortly thereafter, at approximately 2:25 p.m., Chief Doyle called Detective Carroll and asked him to respond to the hospital's parking lot.

Upon arriving at the parking lot, Detective Carroll recognized Appellant, with whom he had prior extensive contact. Detective Carroll first approached Chief Doyle, who relayed information about the armed robbery, including that the getaway car matched the description of Appellant's car, which was in the hospital parking lot. He then approached Appellant, who indicated he was not the person who had robbed the Metro PCS store earlier in the day; however, he admitted that he had provided transportation to the perpetrator of the robbery.

In an effort to convince Detective Carroll of his role, Appellant played a voicemail message. The detective testified that Appellant told him the voicemail message was allegedly from the robber, who wanted to apologize to Appellant for getting him involved in the robbery. However, upon hearing the voicemail message, Detective Carroll recognized that the voice belonged to Appellant, and he told Appellant that he thought the voice was Appellant's voice.

Detective Carroll testified that he had no doubt Appellant's vehicle was involved in the robbery, and this "was the whole reason we were meeting with Appellant[.]" N.T., 12/4/18, at 46. Accordingly, when Appellant indicated he wished to leave the parking lot to take care of his girlfriend's children, Detective Carroll searched the vehicle.

Based on the aforementioned, we conclude the totality of the circumstances demonstrates a fair probability that contraband or evidence would be found in Appellant's white Ford Fusion. *See Scott*, *supra*. Specifically, based on Appellant's admission that his vehicle had been used earlier in the day as the getaway car in an armed robbery, there was a probability that the police would discover evidence therein. *See Thompson*, *supra*. Thus, we agree with the trial court that the police had probable cause

to believe the vehicle contained contraband, which was all that was necessary to justify the warrantless search of Appellant's vehicle under **Gary**.[12]

In his next issue, Appellant contends the trial court erred in consolidating and/or failing to sever the charge of retail theft, which occurred on January 27, 2017, from the charge of robbery, which occurred on February 20, 2017, at the same Metro PCS store in Tullytown Borough.

Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse of discretion, or prejudice and clear injustice to the defendant. **Commonwealth v. Newman**, 528 Pa. 393, 598 A.2d 275, 277 (1991).

The Rules of Criminal Procedure provide, in relevant part, the following:

> **Rule 582. Joinder--Trial of Separate Indictments of Informations**
>
> (A) Standards
>
> (1) Offenses charged in separate indictments or informations may be tried together if:
>
> (a) the information of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
>
> (b) the offenses charged are based on the same act or transaction
>
> (2) Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

---

[12] We note that, since the officers had probable cause to search the vehicle, they also had probable cause to search the backpack where the contraband could be concealed. **See Commonwealth v. Runyan**, 160 A.3d 831 (Pa.Super. 2017).

Pa.R.Crim.P. 582(A)(1)-(2) (bold in original).

> **Rule 583. Severance of Offenses or Defendants**
>
> The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583 (bold in original).

Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime. ***Commonwealth v. Lauro***, 819 A.2d 100, 107 (Pa.Super. 2003).

> The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

***Id.***

Considering Rules 582 and 583 together, our Supreme Court set forth the following three-part test for deciding whether a court should join or sever charges:

> [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these questions are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

***Commonwealth v. Collins***, 550 Pa. 46, 703 A.2d 418, 422 (1997).

- 24 -

Pursuant to this test, "a court must first determine if the evidence of each of the offenses would be admissible in a separate trial for the other." *Id.* Evidence of other crimes is not admissible solely to show the defendant's bad character or propensity to commit crimes. *Commonwealth v. Dozzo*, 991 A.2d 898, 902 (Pa.Super. 2010). *See* Pa.R.E. 404(b)(1) (providing that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

> Evidence of other crimes is admissible to demonstrate:
>
> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

*Commonwealth v. Janda*, 14 A.3d 147, 156 (Pa.Super. 2011). *See* Pa.R.E. 404(b)(2) (evidence of other crimes admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

In the case *sub judice*, during the hearing on the Commonwealth's motion to consolidate and Appellant's motion to sever, the Commonwealth relevantly averred the following:

> [DISTRICT ATTORNEY]: So on January 27, 2017, there was a retail theft at the Tullytown Metro PCS store which was later the subject of the robbery on February 20, 2017.
> THE COURT: So it's the same store?

[DISTRICT ATTORNEY]: Same store. That is charged on the same bill of information as the robbery, which [defense counsel] is asking to sever.

THE COURT: All right.

[DISTRICT ATTORNEY]: In th[e] [retail theft] case, Judge, the Commonwealth would allege that he used fake names to sign up for phones, a rose iPhone 7, silver iPhone 7 Plus, and a black iPhone 7 plus. And after taking the phone, which is on video, we then have him at 6:19 p.m., which is approximately 51 minutes from the time of the retail theft at the Oxford Valley Mall where he pawns the phones, one at 6:19 p.m.; one at, looks like, 5:44 p.m.; and 7:49 p.m., all at the Oxford Valley Mall.

In that instance, his face is not covered. He interacts with the loss prevention officer. It would be my argument that this is one of the reasons why [Appellant] decided to rob that store because, initially, when he [did] the retail theft, he was not covered, the store employee could see him, they knew who he was. If [he] went back to that store uncovered they would know he was the one who committed the retail theft previously, and that's why he decided to commit the robbery.

THE COURT: Okay.

[DISTRICT ATTORNEY]: It also shows his knowledge of the store, where the iPhones are, where they're located, where the desk is, and how it's set up.

\*\*\*

Now on February 20,…is the robbery at the Tullytown in Metro. This was the same Metro PCS of the first retail theft. In that instance the robber['s] [face] is covered.

There are nine phones and U.S. currency taken from the back room at the point of gun. Two of the phones were sold—one was sold—sorry. Two were sold at the Neshaminy Mall, one at 12:36 and one at 12:53 p.m. by [Appellant]. A third was sold at 1:46 p.m. at the Oxford Valley Mall by [Appellant]. And then the rest of the stolen phones were recovered inside the vehicle at St. Mary's Hospital.

The robber was seen by Chris Smolski leaving the store fleeing to the white Ford Fusion parked in an adjacent neighborhood. He gets in the driver's seat by himself and flees.

N.T., 12/4/18, at 83-86.

We conclude that evidence of the January 27, 2017, retail theft would have been admissible in a separate trial for the February 20, 2017, armed robbery to show opportunity, preparation, and motive. Specifically, the retail theft, which occurred less than a month before the armed robbery, provided Appellant with the opportunity to gain knowledge about the particular store so as to be prepared for the armed robbery. *See Janda*, *supra*. Further, the evidence from the retail theft revealing the stolen phones were easily pawned at malls for money would have been admissible at a separate trial on the robbery charge to show motive. *Id.*

Moreover, we conclude the evidence of the January 27, 2017, retail theft is capable of separation from the evidence of the February 20, 2017, armed robbery such that the jury would not be confused. *Collins*, *supra*. Finally, Appellant was not unduly prejudiced. *See id.* Accordingly, the trial court did not err in consolidating/declining to sever the charges.

For all of the foregoing reasons, we affirm.

Affirmed.

Panella, P.J. joins the memorandum.

Judge McCaffery files a concurring/dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/29/17</u>